## NEWARK FIRE INS. CO. v. BISBEE LINSEED CO., and four other cases.

Circuit Court of Appeals, Third Circuit.
July 16, 1929.

Rehearing Denied August 28, 1929.

Nos. 3892–3896.

Charles F. Curley, of Wilmington, Del., and Horace M. Schell, of Philadelphia, Pa., for appellants.

Frank Sowers, of New York City, and James H. Hughes, Jr., and Clarence A. Southerland, both of Wilmington, Del., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal by five insurance companies from judgments aggregating $160,783.33 recovered in the District Court on use and occupation insurance policies. By stipulation the decision in the case of the Newark Fire Insurance Company v. Bisbee Linseed Company will control the other cases.

The Newark Company insured the Bisbee Company against loss occasioned by fire on account of its inability to occupy and use its factory during the time it was being repaired. The policy contained the following provision:

"(1) The conditions of this contract are that if the buildings and/or machinery and/or equipment and/or raw stock contained therein, be destroyed or damaged by fire occurring during the term of this policy so as to necessitate a total or partial suspension of business, this Company shall be liable under this policy for the actual loss sustained consisting of:

"I. Net profits on the business which is thereby prevented.

"II. Such fixed charges and expenses as must necessarily continue during a total or partial suspension of business, to the extent only that such fixed charges and expenses would have been earned had no fire occurred."

A fire destroyed the Philadelphia factory of the Bisbee Company on December 23, 1925. There were two questions at issue in the District Court: First, the time necessarily consumed in rebuilding the factory;

and, second, the loss sustained during that time.

The length of time reasonably required to rebuild the factory was warmly contested in the District Court. The extent of the time for which the insurance company was liable under the policy was 300 days. The method adopted to determine the amount of loss was to ascertain the loss per day (which included the net profits on the business, and fixed charges and expenses necessarily incurred during the suspension of business), and multiply that amount by the number of days required to rebuild the factory.

The time actually consumed in rebuilding the factory was more than a year. The plaintiff contends that it could not have been rebuilt within a shorter period. The defendant says that with reasonable diligence it could have been rebuilt within 6 months. Reasonable diligence was, therefore, an issue. The jury found that it reasonably required more than a year, and its verdict settles that issue.

The aggregate amount of insurance covered by the five policies was $150,000. Of this amount $25,000 was represented by the policy of the Newark Company.

The entire loss was found to be more than $200,000, but the plaintiff was limited to a maximum amount of $150,000 with interest. While the loss on the Newark Company policy exceeded $25,000, recovery was limited to that amount, and so the jury returned a verdict of "$25,000 with interest at 6%. Total $26,783.33."

The insurance company did not appeal from the finding of the jury as to the time required with reasonable diligence to rebuild the factory. It appealed only from the amount of net profits the jury found the plaintiff lost or "which would have been derived from the manufacture of finished stock had no fire occurred." This is the sole question before us.

In proving the loss sustained many books—ledgers, journals, books of sales contracts, orders, etc.—were produced. In these the operations of the plaintiff company for a period of 15 months, from October 4, 1924, to December 31, 1925, were recorded. During this time the aggregate sales exceeded $15,000,000. When it appeared from cross-examination that the facts, figures, and calculations contained in these books were "too long and too impractical to present to a jury without the assistance of an auditor," the learned trial judge stated to counsel that for their guidance he would appoint an impartial auditor whose report would be "prima facie correct," but that either side might rebut it and show that it was incorrect. Thereupon, with the consent of both parties Mr. Charles A. Harrington of Wilmington was appointed auditor. The facts justified the appointment. "Where accounts are complex and intricate, or the documents and other evidence voluminous, or where extensive computations are to be made, it is the better practice to refer the matter to a special master or commissioner than for the judge to undertake to perform the task himself. Heirs of P. F. Dubourg de St. Colombe v. United States, 7 Pet. 625, 8 L. Ed. 807; Chicago, Milwaukee & St. Paul Ry. Co. v. Tompkins, 176 U. S. 167, 180, 20 S. Ct. 336, 44 L. Ed. 417." Ex parte Peterson, 253 U. S. 300, 313, 40 S. Ct. 543, 547 (64 L. Ed. 919).

The order appointing the auditor was as follows:

"And Now, to wit this twenty-first day of March, 1928, the above stated cause coming on to be heard before the Court and the jury impaneled therein, and it appearing to the Court that one of the issues in the said cause is the determination of the profits made by the plaintiff corporation in the operation of a certain linseed oil mill from October 4, A. D. 1924, to and including December 31, A. D. 1925, and that the determination of such profits requires the examination of voluminous books and records containing a very great number of items and entries;

"And It Further Appearing to the Court that a preliminary investigation and examination of said books and accounts by a skilled auditor will be of substantial service to the jury in arriving at its verdict; It is

"Ordered by the Court (counsel for the parties in the above stated cause being present and consenting thereto) that Charles A. Harrington of the City of Wilmington, County of New Castle and State of Delaware, be and he is hereby appointed auditor in the above stated cause, and he is hereby directed and empowered to make a preliminary investigation of the facts pertaining to said issue, hear the witnesses, if necessary, examine the said accounts and records, and make and file a report in the office of the Clerk of this court, with the view to simplifying the issues for the jury but not finally to determine any of the issues in said cause, the final determination of said issues of fact to be made by the jury on the trial."

The auditor examined the books and made his report, and it is the following charge of the court as to this report that the appellant has assigned as error: "We are

now to inquire what that loss was per day. In appointing an auditor to do that, the law gives to his report a presumption of prima facie accuracy and correctness. Unless and until it is overcome by other evidence which is sufficient in your mind to overcome it, the auditor's report stands as a proper disclosure and an accurate disclosure of the profits during the period which the parties recited and agreed under this last clause in paragraph 2 for the profits for the period antedating the fire."

The court further said in his colloquy with counsel: "The auditor's report is fixed by the Supreme Court of the United States to be prima facie correct, and I am charging in the language of the Supreme Court of the United States." This last statement was made by the judge after he had finished his general charge, and was a comment made, as we understand it, to counsel in explanation of that part of the charge to which exception had been taken. Whether or not it was made in the hearing of the jury, we do not know, but it makes no difference, for it is substantially what he had just charged.

The appellant says that the charge was erroneous because it was equivalent to an instruction that the plaintiff's books and records were prima facie evidence until rebutted, and, further, because they contained an improper and incorrect disclosure of profits.

It was held in the case of Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919, that the District Court had power to appoint an auditor in a case where there were complicated facts and accounts such as there are in this case in order to render possible an intelligent consideration of the case by the court and jury; that his report, if accepted by the court, would be admitted at the trial before the jury as prima facie evidence both of the evidentiary facts and of the conclusions of fact therein set forth; and that such appointment is a power inherent in the District Court as a trial court and consistent with the constitutional right of trial by jury. But counsel says: "When the Court charged that such report was a proper and accurate disclosure of the profits themselves, it necessarily referred to whatever facts might be a basis for the entries showing such profits. It thereby instructed the jury that plaintiff's evidence, in the form of such books and records, constituted a proper and accurate disclosure of its profits during the said period unless and until such evidence was rebutted by other evidence."

We think, however, that the charge was nothing more than instruction to the jury that the report was admitted "as evidence of facts and findings embodied therein; * * * as prima facie evidence thereof." It was legally correct and in no way prejudicial to appellant. The jury must have understood from the charge that the report was not conclusive and ultimately binding, but only prima facie and could be rebutted. The defendant was "as free to call, examine and cross-examine witnesses as if the report had not been made" and could have overcome its prima facie value or character of the presumptively "accurate disclosures," if they were in fact not true. We do not think that the District Court misinterpreted or misapplied the language which the Supreme Court used in the Peterson Case.

Nor do we think that it was necessary for the auditor to call witnesses in order to make his report prima facie evidence of the facts and conclusions set forth therein. It is true that in the Peterson Case the court said that, in order to perform the duties imposed upon him, "the auditor would be required, not merely to examine books, vouchers, and other papers, and to make computations, but to hear and pass upon conflicting testimony of the parties and of other witnesses." In that case the court appointed the auditor, "with instructions to make a preliminary investigation as to the facts; to hear the witnesses; examine the accounts of the parties," etc. In the case at bar the auditor was, with the consent of the appellant, "directed and empowered to make a preliminary investigation of the facts pertaining to said issue, to hear the witnesses, if necessary, examine the said accounts and records," etc. But unless an examination of witnesses was necessary "in order to render possible an intelligent consideration of the case by the court and jury," we see no reason on principle or authority why they should be called. The auditor could examine the accounts and books, and reach conclusions prima facie correct without calling witnesses. In some cases it might be necessary to call witnesses, but in others it would not.

Appellant says the charge with regard to the report was erroneous, because the court instructed the jury that it contained a proper and accurate disclosure of the manufacturing profits of the Philadelphia plant during the period in question, because the "oil sales from consigned stock," amounting to $1,521,009.60, were not placed under the heading of the Philadelphia plant or the Chicago Heights plant where they belong and because there was nothing in the report to show what portion of this item represented sales from the

stock consigned to the Philadelphia plant whose profits alone were in issue.

In the first place, no exception was filed to this report. And, further, the appellant could have called witnesses and shown, if he could, the portion of the sales which belonged to the Philadelphia plant and thus have corrected any possible error in the report. Besides, the president of the plaintiff company testified that 21.49 per cent. of the business of the company was done at Chicago and the rest at the Philadelphia plant, and the jury might have accepted these as the correct figures.

Upon a careful examination of the entire case, we do not find that the court erred, and the judgment is affirmed.